[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case is a three count amended complaint dated October 23, 2002 in which the plaintiff (Profitec) alleges in the First Count [Unjust Enrichment], Second Count [Quantum Meruit] and the Third Count [Breach of Contract-Payment of Services]. All the counts arise out of a contract between Profitec and the defendant Essex Communications, Inc. (Essex).
Profitec and Essex entered into a contract Exhibit 1. Profitec acted as a billing service for Essex; telephone business.
The contract period was for 24 months commencing upon the execution of the contract. The contract provided that the agreement would be extended for 12 months unless Customer or Profitec shall have provided by certified mail to the other party written notice of termination at least sixty days prior to the expiration of the initial or any subsequent term.
Essex alleged four special defenses to the action by Profitec. The first special defense is lack of consideration; the second special defense asserts that the complaint contains penalty clauses that are against public policy; the third special defense alleges failure on the part of the plaintiff to timely prepare billings correctly or in a quality manner and the fourth special defense is that the plaintiff is limited to the value of the contract to the date of termination.
Essex further alleged a counterclaim that Profitec breached the contract in that they failed to produce bills timely, they never billed some customers and they misused customer information.
Essentially in this case as outlined by Essex the legal questions presented in the contract (Exhibit 1) are as follows:
What is the effect, if any, of paragraph VI, which provided, in pertinent part, that plaintiff was to cease all services if invoices were CT Page 15292 not paid within 30 days, and the plaintiff continued to do so?
Could plaintiff automatically renew a contract that was allegedly in breach, (Paragraph A.1)?
What is the effect, if any, of paragraph X of the contract, that provides for an early termination penalty?
Essex admits that there had been a default in payment of their billings from Profitec for 3 months (Exhibits 2, 3 4) since Essex last payment to Profitec was made in November for the September billing yet Profitec continued service of the accounts of Essex.
Paul Riss (Riss) President and Chief Financial Officer of Essex since February 1998 testified that there were problems with the billing services in that Profitec failed to add appropriate taxes to bills. Riss further stated that they had problems with bills being timely sent. Profitec on the other hand laid the problems at Essex door stating that they were not receiving the tapes with the billing information on time causing their delays.
Essex further testified it had nothing left belonging to Profitec of the system they for Essex after termination.
Thomas Brady vice president of finances of Profitec called to inquire from Riss if Essex was for sale. Essex company generated the January 31 billing for Essex. Essex claimed the December billing was so late they had to leave Profitec.
The plaintiff seeks $292,560.03 in damages (See Exh. A). The amount of damages based upon $54,574.10 for Exhibits 2, 3 and 4. A termination fee of $237,985.93.
Essex argues that the failure to give written notice of the termination of the contract was evident and unnecessary in view of the fact that they assumed failure to make payments under the contract automatically terminated the contract. The plaintiff did not show that work was done after the 24 month term of the contract and to impose a claim based upon the extension term only was in fact a penalty.
Essex argues that the plaintiffs claim for sums due under the extension period are illusionary and not reasonable.
The court finds that the early termination fee in the amount of $237,985.93 is so disproportionate to the amount owed for three months CT Page 15293 constitutes a penalty that is not commensurate with the extent of the injury and should not be enforced as against public policy. The clause is based upon a renewal of the original contract only and no damages were shown by the plaintiff for the renewal period. It would be unconscionable and not reasonably foreseeable that that amount of damages would arise out of an unrenewed period of one year, the extension period. This court for the foregoing reasons will not enforce the provision under the contract for early termination. The plaintiff had knowledge that the contracting defendant was in default and not likely to renew the agreement for the extension period.
"As a general rule parties can contract to liquidate their damages, and courts have not interfered with such contracts where the proof of damages would be uncertain or difficult and the amount agreed upon is reasonably commensurate with the extent of the injury. The amount stipulated must be a reasonable one, not greatly disproportioned to the presumable loss of injury." See King Motors v. Delfino 136 Conn. 496. The penalty for early termination is unreasonable in this case.
The defendant has failed to meet its burden of proof regarding the counterclaim. If anything the counterclaim recites and supports its defense. No damages were shown for the counterclaim.
Accordingly, judgment is entered in favor of the plaintiff to recover the sum of $54,574.10 plus court costs.
 _____________________________ Frank S. Meadow Judge Trial Referee
CT Page 15294